# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2539

_____

Royal Insurance Company of
America,

        Plaintiff - Appellant,

      v.

Duhamel Broadcasting Enterprises,
Inc.,

        Defendant - Appellee.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the District of
\*  Nebraska.
\*
\*  [UNPUBLISHED]
\*
\*

_____

Submitted: December 14, 2005
Filed:  March 13, 2006

_____

Before BYE, BOWMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

This declaratory judgment action involves the interpretation of an insurance policy issued by Royal Insurance to Duhamel Broadcasting Enterprises, Inc. (DBE), covering a television tower located near Hemingford, Nebraska, which fell down on September 24, 2002.  Following a bench trial, the district court[1] held the policy was

_____

[1]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

unambiguous and Royal had no duty to indemnify DBE for the collapse of the tower. The district court also denied DBE's counterclaims based on promissory estoppel, reformation and negligence. We affirm.

DBE is in the business of radio and television broadcasting. It owns approximately fifteen radio/television towers, including the 1,965-foot tower involved in this action. In early 2002, DBE undertook to add additional reinforcements to the tower in anticipation of adding an HDTV antenna. Among other changes, DBE's engineering consultant recommended replacing eighteen diagonal braces with stronger braces. On September 24, 2002, a construction crew was onsite replacing the braces. Workers removed two of the braces but failed to put in place temporary braces to support the structure while the reconstruction was underway. As a result, the tower fell down.

Also in early 2002, DBE was notified by its insurance carrier it would no longer be insuring radio/television towers. DBE contacted Dave Schmidt Insurance Agency and requested assistance in securing a new carrier. Schmidt submitted an application to Royal seeking coverage for all of DBE's towers. As part of the application disclosure, DBE advised Royal it was in the process of modifying the Hemingford tower and expected the work to be completed by late fall. Royal's underwriter sent a letter to Schmidt requesting additional information, including certificates from the contractors performing the upgrades confirming they carried insurance containing adequate policy limits and listed DBE as an additional insured. Thereafter, Royal sent a twenty-five-page proposal responding to DBE's request for coverage. The proposal only listed exclusions for acts of war and terrorism, but at the bottom of each page advised DBE the policy, not the "descriptive proposal," would dictate the terms of coverage. DBE accepted the proposal, and the policy covering the Hemingford tower was delivered September 17, 2002. It is undisputed DBE did not read the policy during the next seven days when the tower collapsed.

DBE submitted a claim to Royal and it denied coverage. Royal based its denial on several exclusions not included in the proposal – only two of which are relevant to this appeal. First, Royal's policy excluded coverage for towers "undergoing . . . alteration . . . if the loss or damage is caused by or results from the . . . alteration. Second, Royal denied coverage based on an exclusion excepting from coverage "loss or damage caused by or resulting from . . . faulty, inadequate or defective . . . workmanship." Royal filed this declaratory judgment action asking the court to declare the rights and obligations of the parties to the contract. DBE answered arguing the exclusions did not apply. Additionally, DBE counterclaimed arguing Royal was estopped from denying coverage because the exclusions were not included in the proposal. Alternatively, DBE argued the insurance contract should be reformed to reflect the mutual intent of the parties or Royal was negligent in failing to provide the coverage requested.

At trial, Royal argued there was no coverage because the tower was undergoing alterations at the time of its collapse and the alterations caused the tower to fail. DBE argued the term "alteration" implied action more extensive than swapping out eighteen of the 1000 plus diagonal braces. Alternatively, DBE argued alteration did not include the "process" of altering the tower. Instead, alteration was used as a noun and the exclusion did not apply because it was the negligence of the contractors in performing the work necessary to alter the tower – not the completed alteration – that caused the collapse.

Royal also argued there was no coverage as the loss or damage was caused by faulty workmanship, i.e., the negligence of the construction crew. DBE argued the exclusion did not apply because faulty workmanship did not include contractor negligence. Rather, faulty workmanship referred only to flaws in the finished product, not the construction process which brought it about.

The district court found the policy language unambiguous and interpreted alteration to include replacing the diagonal braces to change the weight bearing characteristics of the tower. Additionally, the court rejected DBE's argument that "alteration" was used only as a noun and did not include the process of altering the tower.

Next, the district court recognized "workmanship" could describe the process of producing something as well as the finished product. It concluded, however, the distinction in this case was meaningless because the different definitions could be read consistently and did not render the contract language ambiguous.

The district court also considered and rejected each of DBE's counterclaims. First, the district court found promissory estoppel inapplicable because there was no express promise by Royal to provide coverage for the Hemingford tower without coverage exceptions. Rather, the proposal repeatedly stated any discrepancies between the proposal and the policy would be resolved by the wording contained in the policy. Moreover, because the alleged promise was followed by a written contract which clearly set forth the rights and obligations of the parties, no injustice would be occasioned by holding the parties to the contract terms.

Similarly, the district court refused to reform the contract because there was no "clear, convincing, and satisfactory evidence" the agreement did not express the true intent of the parties. Royal was aware of the ongoing alterations to the tower before it issued the policy and requested proof the contractors performing the work carried insurance containing adequate coverage limits, thereby suggesting it did not intend to insure the work process itself. Accordingly, the court concluded the evidence was of insufficient quality to demonstrate the parties ever clearly communicated on the issue of whether the alterations to the tower would be a covered risk.

On appeal, DBE argues the district court erred in rejecting its interpretation of the contract terms "alteration" and "workmanship." Alternatively, it argues the district court improperly dismissed its counterclaims based on promissory estoppel and reformation.

After carefully reviewing the record on appeal, we affirm the order and judgment of the district court. Because an extended discussion would add nothing to the well-reasoned order of the district court, we affirm by virtue of 8th Cir. R. 47B.

_____